UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

GARDEN CITY BOXING CLUB, INC.,          :
as Broadcast Licensee of the
JUNE 5, 2004 DeLaHoya/Sturm,            :
Program,
                                        :
                        Plaintiff,          06 Civ. 3145 (BSJ)(HBP)
                                        :
       -against-                            REPORT AND
                                        :   RECOMMENDATION
STEVE CONWAY AND DARREN WRIGHT,
individually and as officers,           :
directors, shareholders and/or
principals of MOMENTUM ENTERPRISES :
OF N.Y. INC. d/b/a "Two Minute
Warning" a/k/a "Jenzi Lounge", and :
MOMENTUM ENTERPRISES OF N.Y. INC.
d/b/a "Two Minute Warning"              :
a/k/a "Jenzi Lounge",
                                        :
                        Defendants.
                                        :

------------------------------------X

            PITMAN, United States Magistrate Judge:

            TO THE HONORABLE BARBARA S. JONES, United States

District Judge,


I.   Introduction

            By Order dated April 9, 2007, the Honorable Barbara S.

Jones, United States District Judge for the Southern District of

New York, referred this matter to me to conduct an inquest and to

issue a report concerning plaintiff's damages (Docket Item 13).

On April 9, 2007, Judge Jones also issued an Order granting plaintiff's motion for a default judgment against defendants Steve Conway, Darren Wright, and Momentum Enterprises of N.Y. d/b/a Two Minute Warning a/k/a Jenzi Lounge ("Momentum Enterprises") (Docket Item 13). Plaintiff has subsequently submitted a memorandum of law detailing proposed findings of fact and conclusions of law in support of its application for damages (Docket Item 16).

Despite having been served with a copy of the original Summons and Complaint and the motion for a default judgment, defendants have not made any written submissions to the Court or attempted to contact my chambers in any manner. Accordingly, on the basis of plaintiff's written submissions alone, I recommend that the Court make the following findings of fact and conclusions of law.

II. Findings of Fact

A. The Parties

1. The plaintiff, Garden City Boxing Club, Inc., is a California Corporation with its principal place of business in Campbell, California (Complaint ¶ 5[1], Docket Item 1).

---

[1]As a result of defendants' default, all the allegations of the Complaint as to them, except as to the amount of damages, must be taken as true. Bambu Sales, Inc. v. Ozak Trading Inc.,

(continued...)

2.  Defendant, Momentum Enterprises is a business entity, the exact nature of which is unknown, having its principal place of business at 684 St. Nicholas Avenue, New York, New York 10033 (the "Establishment") (Plaintiff's Proposed Findings of Fact and Conclusions of Law Regarding Damages, dated June 29, 2007 ("Plf.'s Proposed Findings") at ¶ 2; Complaint ¶ 11).

3.  Defendants, Steve Conway and Darren Wright, are officers, directors, shareholders and/or principals of Momentum Enterprises and were the individuals with supervisory capacity and control over the activities occurring within the Establishment on June 5, 2004 (Complaint ¶ 9).

B.  Plaintiff's Business and
    the Defendants' Illegal
    Interception of Cable
    Television Programming

4.  By contract, plaintiff, Garden City Boxing Club, Inc., was granted the exclusive right to distribute telecasts of the DeLaHoya/Sturm boxing match, including all undercard or preliminary bouts, on June 5, 2004 (the "Program"), via closed

---

[1](...continued)
58 F.3d 849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158-59 (2d Cir. 1992); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986).  In this case, plaintiff indicates a lack of knowledge regarding the nature of defendant's business structure and regarding defendant's primary place of business (Complaint ¶¶ 11-14).

circuit television and encrypted satellite signal to defendants'
geographic area (Plf.'s Proposed Findings ¶ 3).  The Program
originated via satellite uplink and was subsequently re-transmit-
ted to cable systems and satellite companies via encrypted
satellite signal (Complaint ¶ 16).

   5.  Pursuant to the contract, plaintiff entered into
agreements with various entities in the State of New York,
allowing them to exhibit the Program to their patrons (Complaint
¶ 17).

   6.  Plaintiff expended a substantial amount of money to
transmit the Program only to those entities in the State of New
York which had entered into agreements with plaintiff to exhibit
the Program to their patrons (Complaint ¶ 18).

   7.  The defendants did not contract with plaintiff to
receive or broadcast the Program at the Establishment (Affidavit
of Joseph Gagliardi, sworn to August 4, 2006 ("Gagliardi Aff.")
at ¶ 8; see also List of Authorized Locations attached as Ex. B
to the Gagliardi Aff.).

   8.  With full knowledge that the Program was not to be
received and exhibited by entities unauthorized to do so, the
defendants and/or their agents, servants, workmen or employees
unlawfully intercepted, received and/or de-scrambled the satel-
lite signals by which the Program was transmitted and did exhibit
the Program at the Establishment willfully and for purposes of

4

direct or indirect commercial advantage or private financial gain
(Complaint ¶ 19).

9.   At the time the Program was broadcast over plain-
tiff's system on the night of June 5, 2004, an auditor hired by
plaintiff visited the Establishment.  The auditor was on the
premises for fifteen minutes during which time he observed
approximately twelve (12) patrons and three television sets
displaying the Program (Affidavit of Jose Ramos, sworn to June 9,
2004 ("Ramos Aff.") attached as Ex. C1[2] to the Gagliardi Aff.).

10.  The Establishment sold drinks and/or liquor to
patrons during its exhibition of the Program (Ramos Aff. ¶ 5).

11.  Apart from the information set forth in the
preceding two paragraphs, plaintiff has provided no evidence
concerning the extent to which the defendants derived economic
benefit from their illegal interception of the Program.

III.  Conclusions of Law

12.  This action arises under 47 U.S.C. §§ 553 and 605.
The Court has jurisdiction over this action pursuant to 28 U.S.C.
§ 1331.  Venue is properly established in the Southern District
of New York pursuant to 28 U.S.C. § 1391(b).

---

[2]Plaintiff has mistakenly labeled multiple exhibits as
"Exhibit C."  In order to avoid confusion, I refer to them as C1,
C2, and C3.

13.  The facts set forth in the affidavits submitted by plaintiff along with the uncontroverted allegations of the complaint, taken together with all the reasonable inferences that can be drawn therefrom, Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981), demonstrate that the defendants have engaged in the unauthorized reception of the plaintiff's cable television programming in violation of Sections 553(a)(1) and 605(a) of the Communications Act, 47 U.S.C. §§ 553(a)(1) and 605(a).

14.  Sections 553(a)(1) and 605(a) of the Communications Act both prohibit the unauthorized reception of any cable television programming services which originate as satellite-delivered "radio communications." Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 434-35 (2d Cir. 2002); Int'l Cablevision, Inc. v. Sykes & Noel, 75 F.3d 123, 133 (2d Cir. 1996); see also Time Warner Cable of N.Y. City v. Taco Rapido Rest., 988 F. Supp. 107, 110-11 (E.D.N.Y. 1997); Cablevision Sys. Corp. v. Muneyyirci, 876 F. Supp. 415, 424-25 (E.D.N.Y. 1994). Since at least part of the Program's transmission was accomplished by satellite, the defendants' interception of the Program violated 47 U.S.C. §§ 553(a)(1) and 605(a). Cmty. Television Sys., Inc. v. Caruso, supra, 284 F.3d at 434-35; Int'l Cablevision, Inc. v. Sykes & Noel, supra, 75 F.3d at 131, n.4.

15.  As a party possessing "proprietary rights" in the communications which the defendants intercepted, plaintiff is an "aggrieved person" and thereby authorized to bring this civil action against the defendants pursuant to 47 U.S.C. §§ 553(c)(2) and 605(e)(3)(a).  In accordance with its statutory rights under 47 U.S.C. §§ 553(c)(3)(A) and 605(e)(3)(C)(i), plaintiff has elected to recover money damages against the defendants for their violations of 47 U.S.C. §§ 553(a)(1) and 605(a) in the form of statutory damages, as opposed to actual damages.  The defendants' default has prevented plaintiff from discovering the financial benefits actually derived from the defendants' unauthorized reception of the Program.

16.  Although defendants' conduct has violated both Sections 553 and 605, plaintiff has elected to recover damages under Section 605(a) only (Plf.'s Proposed Findings ¶ 13)[3].  The range of statutory damages for a violation of section 605(a) is $1,000.00 through $10,000.00, except in cases where the violation occurred for direct or indirect commercial advantage or private financial gain.  47 U.S.C. § 605(e)(3)(C)(i)(II).  Where the

---

[3]Plaintiff alleged violations of 47 U.S.C. §605(e)(4) in Count II of its Complaint and of 47 U.S.C. §553 in Count III, but omitted both of these claims from its Motion for a Default Judgment.  Therefore, I deem plaintiff to have abandoned both of these claims.

violation was committed "willfully[4] and for purposes of direct or indirect commercial advantage or private financial gain . . . the court in its discretion, may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation . . . ."  47 U.S.C. § 605(e)(3)(C)-(ii).

17.  Plaintiff seeks $110,000 in statutory damages from the defendants for the interception of the Program, on the theory that the defendants willfully intercepted the Program illegally for commercial advantage and private financial gain.  Although I agree with plaintiff that the defendants did willfully intercept the Program for the illicit purposes cited by plaintiff, I also believe that an award of the theoretical[5] maximum statutory damages is unwarranted here.  In determining whether to award

---

[4]Willfulness in this context can be demonstrated by a defendant's engaging in the affirmative act of installing and utilizing a "pirate" descrambler or some other device in order to illegally receive a transmission (Gagliardi Aff. ¶ 10).  See Garden City Boxing Club, Inc. v. Polanco, 228 Fed. Appx. 29, 30-31 (2d Cir. 2007), citing Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc., 77 F. Supp.2d 485, 490 (S.D.N.Y.1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

[5]Plaintiff arrives at the $110,000 figures by adding the maximum amount of statutory damages recoverable under Section 605(e)(3)(C)(i)(II) to the maximum amount recoverable under Section 605 (e)(3)(C)(ii).  It is not clear whether this aggregation of statutory damages is permissible.  Plaintiff cites no authority addressing the issue and my own research has not disclosed any cases addressing the question.  Since I recommend that the amount to be awarded against the defendants is substantially less than $110,000, I need not resolve this issue.

8

enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), courts consider such factors as whether there is evidence of "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec y Caridad, Inc., 01 Civ. 6562 (SHS), 2001 WL 1586667 at *2 (S.D.N.Y. Dec. 12, 2001); see also Home Box Office v. Champs of New Haven Inc., 837 F. Supp. 480, 484 (D. Conn. 1993). Although the defendants' interception of the Program was illegal, it appears from the information submitted by plaintiff that their use of the Program was limited. There is no evidence that the Establishment imposed a cover charge or admission fee to view the Program, and, thus, it does not appear that the defendants tried to sell Plaintiff's intangible property. Nor is there any evidence that the Establishment advertised its intended broadcast of the Program, charged premiums for drinks during the display of the Program, or received a substantial monetary gain. Lastly, there is no evidence that the defendants are repeat offenders.[6]

---

[6]Plaintiff attaches to its Proposed Findings of Fact and Conclusions of Law, two affidavits from private investigators indicating that the defendants engaged in the display of two other Pay-Per-View broadcasts from that at issue here -- specifically, a September 18, 2004 program and a May 15, 2005 program (Affidavit of Edgardo Rodriguez, sworn to Sept. 24, 2004,
(continued...)

Based on these factors, I find that the most compelling inference is that the Establishment illegally intercepted and displayed the Program in order to induce customers to patronize the Establishment and thereby increase the sale of drinks. Accordingly, I conclude that the theoretical statutory maximum is not appropriate in this instance.

18. As United States Magistrate Judge Ellis has pointed out in <u>Kingvision Pay-Per-View, Ltd. v. Recio</u>, 02 Civ. 6583 (JSM)(RLE), 2003 WL 21383826 at *4 (S.D.N.Y. June 11, 2003):

> Courts have developed two approaches for determining statutory damages under § 605. One approach is to calculate the award of damages by the number of patrons in the establishment at the time of the violation. <u>See</u> <u>Taco Rapido Restaurant</u>, 988 F.Supp. at 111 (court awarded $50 per patron); <u>Googies Luncheonette</u>, 77 F. Supp.2d at 490 (court awarded $60 per patron). Another approach is to award a flat sum for damages. <u>See</u> <u>Kingvision Pay-Per-View, Ltd., v. Jasper Grocery</u>, 152 F.Supp.2d 438, 442 (S.D.N.Y. 2001) (court awarded $5,000); <u>2182 La Caridad Rest., Inc.</u>, 2002 WL 654137 at *3 (court awarded $3,400).

<u>See also Kingvision Pay-Per-View, Ltd. v. El Rey Bistec y Caridad, Inc., supra</u>, 2001 WL 1586667 at *2.

19. I conclude that statutory damages should be assessed based on the number of patrons in the Establishment

---

[6](...continued) attached as Ex. C2 to the Gagliardi Aff.; Affidavit of Edgardo Rodriguez, sworn to May 24, 2005, attached as Ex. C3 to the Gagliardi Aff.). Plaintiff fails to offer, however, any evidence that the display of these programs was unauthorized. Accordingly, I decline to make a finding of recidivism based on this evidence.

while the Program was displayed.  Here, while the record indi-
cates that a residential purchaser of plaintiff's broadcast would
pay $54.95 (Gagliardi Aff. ¶ 10B), plaintiff has presented no
evidence of what it charged commercial establishments for autho-
rization to exhibit the Program.  I shall assume that each patron
purchased an average of $250 worth of drinks as a result of his
or her being in the Establishment while the Program was being
intercepted.  Although this premise assumes a relatively high
level of consumption, it will ensure that all of the defendants'
profits are disgorged and, thereby, discourage the defendants and
others from engaging in similar acts of cable piracy in the
future.  See generally Garden City Boxing Club v. Salcedo, 04
Civ. 5027 (DFE), 2005 WL 2898233 at *2-*3 (S.D.N.Y. Nov. 3,
2005)(awarding the plaintiff $250 per patron, while acknowledging
judicial acceptance of a $300 per patron rate); Joe Hand Promo-
tions, Inc. v. Marius, 05 Civ. 8472 (DAB)(THK), 2007 WL 2351065
at *4 (S.D.N.Y. July 3, 2007) (awarding $50 per patron plus a
$7,500 enhancement); New Contenders, Inc. v. Diaz Seafood, Corp.,
96 Civ. 4701 (AGS)(HBP), 1997 WL 538827 at *2 (S.D.N.Y. Sept. 2,
1997) (approving award of statutory damages assessed at a rate of
$300 per patron).  Although this assumption is, to some extent,
speculative, some speculation with respect to damages is permis-
sible where, as here, defendants' default has prevented damages
from being computed with greater certainty.  Katz Communications,

11

Inc. v. Evening News Assoc., 705 F.2d 20, 25 (2d Cir. 1983)
(where the wrongdoer's conduct makes it impossible to ascertain
damages with certainty, the court may resort to "reasonable
conjectures and probable estimates to make the best approximation
possible" (citation and internal quotation marks omitted)).

20.  Applying this methodology with respect to the
Program displayed at the Establishment yields the following
result:

12 patrons x $250.00/patron = $3000.00

21.  Given the defaults of the individual defendants
and the consequence that all allegations against them are deemed
to be true, I also conclude that they are both responsible for
the interception that occurred at the Establishment and that the
individual defendants are, therefore, jointly and severally
liable for the damages recoverable with respect to this estab-
lishment.  Kingvision Pay-Per-View, Ltd. v. Recio, supra, 2003 WL
21383826 at *4.

22.  Section 605(e)(3)(B)(iii) of Title 47 requires a
court to award to "an aggrieved party who prevails" the costs and
reasonable attorneys' fees which it incurred in prosecuting its
claims to judgment.  In the Second Circuit, however, a party
seeking to recover attorney's fees must submit contemporaneous
time records that show "for each attorney, the date, the hours
expended and the nature of the work done." N.Y. State Ass'n for

Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir.
1983).   Transcriptions of contemporaneous time records containing
the above information have been found to satisfy this require-
ment.   See e.g. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec.
Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (accepting a "typed
listing of [attorneys'] hours from computer records," in lieu of
contemporaneous records, where the record showed that the attor-
neys "made contemporaneous entries as the work was completed, and
that their billing was based on these contemporaneous records");
Johnson v. Kay, 742 F. Supp. 822, 837 (S.D.N.Y. 1990) ("Where the
attorneys have provided the court with affidavits that have been
reconstructed from contemporaneous records and that set forth all
charges with specificity, fees have not been denied."); Lenihan
v. City of New York, 640 F. Supp. 822, 824 (S.D.N.Y. 1986) ("The
Court routinely receives computerized transcriptions of contempo-
raneous time records from firms whose billing records are main-
tained in computers" as "a form convenient for the Court.").
"Attorneys' fees applications that do not contain such supporting
data, [however,] 'should normally be disallowed.'"  Cablevision
Sys. N.Y. City Corp. v. Diaz, 01 Civ. 4340 (GEL)(FM), 2002 WL
31045855 at *5 (July 10, 2002), quoting N.Y. State Ass'n for
Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1154, and
citing Kingvision Pay-Per-View v. The Body Shop, 00 Civ. 1089
(LTS), 2002 WL 393091 at *5 (S.D.N.Y. Mar. 13, 2002).

23.   Here, plaintiff has not submitted contemporaneous time records.   Indeed, plaintiff has not submitted affidavits or documents of any kind indicating the amount of attorney's fees that it incurred in bringing this action.   Accordingly, I respectfully recommend that plaintiff not be awarded attorneys' fees in this action.

24.   Plaintiff also seeks to recover its investigative fees of $350.   An award of investigative fees is not appropriate here.   First, it is not clear that investigative costs may be awarded in this context; neither 28 U.S.C. § 1920 nor 47 U.S.C. § 605(e)(3)(B)(iii) expressly provides for the award of investigative fees and courts in this jurisdiction have declined to award investigative fees in similar circumstances.   See e.g. Garden City Boxing Club v. Mendez, 05 Civ. 10001 (RMB)(AJP), 2006 WL 1716909 at *2 (S.D.N.Y. June 16, 2006) (declining to follow magistrate judge's recommendation regarding award of investigator's fees); Kingvision Pay-Per-View Ltd. v. Cardona, 03 Civ. 3839 (GDB)(FM), 2004 WL 1490224 at *4 (S.D.N.Y. June 30, 2004) (Report & Recommendation) (denying request for recovery of investigator's fees and stating that "[t]here is no provision for a prevailing party to be awarded the cost of its investigator"); Joe Hand Promotions, Inc. v. Soto, 01 Civ. 0329 (GBD)(AJP), 2003 WL 22962810, at *2 (S.D.N.Y. Dec. 17, 2003) ("there is no authority to award 'investigative fees' as costs").   Second, assuming

14

without deciding that investigative costs may be awarded under 47 U.S.C. § 605(e)(3)(B)(iii)'s provision for "full costs," see Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp.2d 59, 66-69 (E.D.N.Y. 2006), the evidence provided by plaintiff, an affidavit statement by plaintiff's President Joseph Gagliardi that plaintiff paid $350 for investigative services, is insufficient to establish the time expended by the investigator and the reasonableness of the investigator's fees (Gagliardi Aff. ¶ 9).[7] See Int'l Cablevision, Inc. v. Noel, supra, 982 F. Supp. at 918 ("a request for investigative fees pursuant to § 605(e)(3)(B)(iii) should be subject to the same level of scrutiny to which requests for attorneys' fees are subjected;" thus requiring a plaintiff to document "(1) the amount of time necessary for the investigation; (2) how much the investigators charged per hour; [and] (3) why the investigators are qualified to demand the requested rate."). Plaintiff's affidavit provides none of the required information; accordingly, I respectfully recommended that plaintiff's request for investigative fees be denied in its entirety.

---

[7]Although Mr. Gagliardi's affidavit states that an invoice from Signal Auditing, Inc., the investigative firm, is attached as Exhibit D to the affidavit, no such document was included in plaintiff's submissions to the Court and there was no "Exhibit D" attached to Mr. Gagliardi's affidavit.

15

25.  Finally, plaintiff's complaint also sought an injunction (Compl. ¶¶ 38-39)[8].  Since the propriety of injunctive relief is beyond the scope of the reference, I make no recommendation concerning injunctive relief.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that damages be assessed against the defaulting defendants Steve Conway, Darren Wright, and Momentum Enterprises, jointly and severally, in the amount of $3,000.00.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  See also Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 620, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for

---

[8]Plaintiff, however, omitted this remedy from its Proposed Findings of Facts and Conclusions of Law.

16

filing objections must be directed to Judge Jones.   FAILURE TO
OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS
AND WILL PRECLUDE APPELLATE REVIEW.   Thomas v. Arn, 474 U.S. 140
(1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054
(2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.
1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.
1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         December 12, 2008

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Julie C. Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace hill
P.O. Box 351
Elleville, New York 12428

Steve Conway and Darren Wright
Momentum Enterprises of N.Y., Inc.
d/b/a Two Minute Warning
a/k/a Jenzi Lounge
684 St. Nicholas Avenue,
New York, New York 10033

17